UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CASE NO. CV 06-5014 PJW |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL |
| 1,679 FIREARMS, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| MARIA FERRO, | ) | |
| Claimant, | ) | |

Following a bench trial on September 2 and 3, 2009, the Court makes the following findings of fact and conclusions of law.

I.

FINDINGS OF FACT

1. Claimant Maria Ferro married Robert Ferro in 1979. In 1983, the couple moved to their home at 2045 Tapia Way in Upland, California.

2. Some time between 1983 and 1991, Robert Ferro began collecting firearms. Ferro obtained federal firearms licenses to do so. It is not exactly clear when Robert Ferro obtained the guns that are the subject of this forfeiture, but the Court presumes that all 1,679 guns were obtained by Robert Ferro between 1983 and May 1992.

3. In July 1991, Robert Ferro was arrested by Baldwin Park Police for possessing explosives.

4. The following day, police searched the Ferro residence at 2045 Tapia Way and found numerous firearms and seized some of them.

5. Some time later in 1991, Bureau of Alcohol, Tobacco Firearms & Explosives ("ATF") agents returned some of the guns to Robert Ferro.

6. On October 28, 1991, Robert Ferro submitted an application to renew his federal firearms licenses (9-33-036001-1M-88271 and 9-33-036001-1M-88272).

7. On November 16, 1991, Robert Ferro was charged in state court with violating sections 12303.2 and 12312 of the California Penal Code, relating to possession of explosive ingredients and possession of an explosive. Trial was set for May 1992.

8. On May 1, 1992, Robert Ferro conveyed in writing to his wife Maria Ferro "all of his property and possessions," including his firearm collection.

9. Less than two weeks later, on May 13, 1992, Robert Ferro was convicted in state court of possessing an explosive. On August 11, 1992, he was sentenced to two years in prison.

10. Robert Ferro appealed his conviction to the state appellate court.

11. ATF denied Robert Ferro's applications for federal firearms licenses. Ferro's lawyer challenged ATF's denial of his federal firearms licenses. In October 1992, ATF Assistant General Counsel Larry L. Nickell wrote to Robert Ferro's counsel informing him, among other things, that Ferro could continue his licensed operations under his now-expired firearms licenses until 30 days after his conviction became final. Nickell explained in the letter that his conviction would be "final" under the regulations when all appeals were exhausted.

12. At some unknown date but presumably after his conviction, Robert Ferro advised Maria Ferro that he was not prohibited from possessing firearms and she believed him.

1      13. In December 1993, the state appellate court affirmed Robert Ferro's conviction. *People v. Ferro*, 21 Cal. App. 4th 1 (Cal. Ct. App. 1993). Thereafter, Robert Ferro filed a petition for review in the California Supreme Court, which was denied on March 23, 1994. *People v. Ferro*, No. S037716 (Cal. March 23, 1994). Ferro then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on October 3, 1994. *Ferro v. California*, 513 U.S. 825 (1994).[1]

   14. In June 1995, Robert Ferro went to prison. In September 1996, he was paroled.

   15. After his release from prison, Robert Ferro returned to the family home on Tapia Way in Upland, California and lived there with his wife, Maria Ferro.

   16. On April 14, 2006, ATF agents and local police executed a state search warrant at the Ferro's home on Tapia Way and seized about 700 firearms.

   17. On April 19, 2006, agents returned and executed another search warrant, this time seizing the rest of the 1,679 firearms that are the subject of this forfeiture. Among the items seized were 87,983 rounds of ammunition, 35 machineguns, 130 silencers, three short-barreled rifles, three destructive devices, a live hand grenade, a military rocket launcher tube, five bullet-proof vests, grenade fuses, and grenade hulls. All of the firearms had traveled in interstate commerce.

   18. The firearms for the most part were secreted in walls, under floors, and in hidden cabinets and hidden rooms throughout the house and the garage. In the backyard, there was an underground bunker that housed a shooting range. Maria Ferro did not know about the vast majority of the firearms hidden in her house; she did not know how many guns were in the house nor did she know where they were located.

   19. Robert Ferro possessed all of the firearms at the time of the seizure.

   20. In April 2006, when these guns were seized, Maria Ferro was aware of Robert Ferro's 1992 conviction and of the fact that he had been sentenced to more than one year

---

[1] The Court takes judicial notice of these state court documents pursuant to Federal Rule of Evidence 201(c).

in prison.  She also knew that he possessed the firearms that are the subject of this forfeiture.

    21.  On August 10, 2006, the government filed the instant action, seeking the forfeiture of the 1,679 firearms found in the Ferro home in April 2006.  The government sought forfeiture under five separate legal theories:

    a.    First Claim for Relief: the firearms were in the possession of a person who had been convicted of an offense punishable by imprisonment of more than one year, in violation of 18 U.S.C. § 922(g)(1), making them subject to forfeiture pursuant to 18 U.S.C. § 924(d);

    b.    Second Claim for Relief: forty of the firearms are machineguns as defined at 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b), and were possessed in violation of 18 U.S.C. § 922(o), making them subject to forfeiture pursuant to 18 U.S.C. § 924(d);

    c.    Third Claim for Relief: 186 of the firearms are machineguns, silencers, destructive devices, short barrel rifles, short barrel shotguns or "any other weapons" as defined in 26 U.S.C. § 5845, and were therefore required to be registered, but were not, in violation of 26 U.S.C. § 5861(d), making them subject to forfeiture pursuant to 26 U.S.C. § 5872;

    d.    Fourth Claim for Relief: 31 of the firearms were equipped with silencers as defined in 26 U.S.C. § 5845(a) and 18 U.S.C. § 921(a)(24), in violation of 26 U.S.C. § 5861(d), making them subject to forfeiture pursuant to 26 U.S.C. § 7302; and

    e.    Fifth Claim for Relief: four of the firearms are explosive materials as defined in 18 U.S.C. § 842(j) that were involved or used in one or more violations of Chapter 40 of Title 18 of the United States Code, making them subject to forfeiture pursuant to 18 U.S.C. § 844(c).

22. Maria Ferro does not contest the propriety of the forfeiture of the firearms identified by the government in the Second, Third, Fourth, and Fifth Claims for relief.  She does, however, contest the forfeiture of the rest of the firearms.  These firearms are depicted in Exhibit 101, which is a bound volume prepared by an auction house in connection with this case, listing each firearm, describing it, and showing a picture of it.  All of the guns identified in exhibit 101 are "firearms" as defined in 18 U.S.C. § 921.

## II.

## CONCLUSIONS OF LAW

1. Civil forfeiture cases are governed procedurally by 18 U.S.C. § 983, and substantively by the specific statutory provisions which provide for forfeiture of property acquired through or involved in particular federal violations.  They are *in rem* proceedings against the property sought for forfeiture, not *in personam* against the claimant of the property.  *Via Mat International South America, Ltd. v. United States*, 446 F.3d 1258, 1264 (11th Cir. 2006).  Forfeitability is not dependent on the culpability of the claimant.  *United States v. $734,578.82 in U.S. Currency*, 286 F.3d 641, 649 (3d Cir. 2002).

2. Pursuant to 18 U.S.C. § 924(d)(1), any firearm possessed by a felon in violation of 18 U.S.C. § 922 (g)--the felon-in-possession statute--is subject to forfeiture.  The government bears the burden of establishing by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983 (c)(1).  In making this showing, it may rely on evidence gathered after the filing of the complaint.   18 U.S.C. § 983(c)(2).

3. The government has established by a preponderance of the evidence that Robert Ferro was convicted of a felony in 1992, that he was sentenced to more than one year in prison, and that he possessed the firearms in this case in 2006, after the conviction was final.  As such, they are subject to forfeiture.  Maria Ferro does not challenge this conclusion as to the firearms identified in Claims Two, Three, Four, and Five of the government's Complaint.  Accordingly, it is ordered that these guns are forfeited.  Maria Ferro does, however, challenge the forfeiture of the remaining firearms, all of which have been identified in Exhibit 101.  The remaining discussion relates only to those firearms.

4. Maria Ferro argues that her husband's conviction was not final in 2006, and, therefore, he was not prohibited from possessing guns at that time. She points out that he filed a petition for *coram vobis* in the state appellate court in 2008, after the government filed this forfeiture action. In her view, Robert Ferro's conviction will not be final as long as there exists some means to collaterally challenge it in state or federal court. The Court rejects this argument. Were this the case, no conviction would ever be final in this state because the rules governing procedure allow for collateral attacks forever. This case is a prime example. Though Robert Ferro was convicted in 1992, and though his appeals were exhausted in 1994, he was still able to challenge this conviction in 2008 . The Court concludes that "final" for purposes of the statutes and regulations governing forfeiture of firearms possessed by felons means when all direct appeals, i.e., to the state appellate court, the state supreme court, and the United States Supreme Court, have been timely completed. *See, e.g., Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) (superceded by statute on other grounds) ) ("When the process of direct review--which, if a federal question is involved, includes the right to petition this Court for a writ of certiorari--comes to an end, a presumption of finality and legality attaches to the conviction and sentence."). Later collateral challenges to a conviction, whether they be through state or federal habeas or some other vehicle, like a petition for writ of *coram vobis*, do not render a criminal conviction non-final.

5. In a slight twist to this argument, Maria Ferro argues that her case is different because her husband had been a federal firearms licensee. She points out that, even the ATF recognized that her husband could continue to operate his business while his appeals were pending and, therefore, he was not barred from possessing these weapons in connection with the operation of his firearms business until after his collateral challenges to his conviction were exhausted, citing 27 C.F.R. § 478.144(i)(1). Again, the Court disagrees. Robert Ferro's conviction became final in 1994, when the United States Supreme Court denied his petition for writ of certiorari. He then had 30 days to wind down

his business and get rid of any firearms that were part of the inventory of his business. His possession of these guns more than twelve years later was not authorized under the law.

6. Maria Ferro has raised an innocent owner defense. The burden of proof is on her to establish by a preponderance of the evidence that the property should not be forfeited based on this defense. 18 U.S.C. § 983(d)(1).

7. To raise an innocent owner defense, the claimant must establish that, at the time of the seizure, she was the owner of the property under state law, *see United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 n.3 (9th Cir. 2004), and federal law. *United States v. Lester*, 85 F.3d 1409, 1412 (9th Cir. 1996).

8. Maria Ferro claims that, in 2006, she was the sole owner of the guns pursuant to a 1992 conveyance from her husband in which he transferred his community property interest in the guns to her. The government contends that Maria Ferro was not the real owner of the guns under federal law, simply a nominee, because the transfer from her husband to her was merely a ruse. It argues that, as a nominee, she does not qualify as an owner under federal law, citing 18 U.S.C. § 983(d)(6) (B)(iii). The Court need not address this issue, however, because, for the reasons explained below, assuming, arguendo, that Maria Ferro had standing to raise the innocent owner defense, her claim fails because she was not an innocent owner as that term is defined.

9. Maria Ferro claims that she is an innocent owner because she did not know that her husband could not possess firearms after his conviction in 1992. *See* 18 U.S.C. § 983(d)(2)(B)(i). The government counters that, even if she did not know, this does not make her an "innocent" owner under the law. According to the government, the law does not require that the owner understand the law and be able to apply the facts to the law. Rather, the owner need only understand the predicate facts, in this case that Robert Ferro had been convicted of a felony, sentenced to more than one year in prison, and, thereafter, possessed a firearm.

10. The Court sides with the government, here. To prevail on an innocent owner defense, the owner must establish that she did not know the facts giving rise to the

7

forfeiture, not that she did not understand the significance of those facts when applied to existing law. *See, e.g., United States v. Real Property at 874 Gartel Drive,* 79 F.3d 918, 924 (9th Cir. 1996) ("An innocent owner under § 981(a)(2), however, must lack knowledge of the transactions; it is not enough to demonstrate ignorance of the transactions' illegality."). Thus, assuming, as this Court does, that Maria Ferro did not know that her husband could not possess guns, her innocent owner defense still fails. She knew that her husband had been convicted of a felony and sentenced to more than one year in jail and that he possessed these firearms after his conviction. For these reasons, her innocent owner defense fails and the guns identified in Exhibit 101 are subject to forfeiture.

## III.
## CONCLUSION

For all these reasons, Defendant firearms are hereby forfeited to the United States.

It is so ordered.

This 30th day of September 2009.

*/s/ Patrick J. Walsh*

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-X\USA v 1,679 Firearms\Court's.findings and conclusions.wpd